Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MUNICIPIO DE UTUADO, representado por su Hon. Jorge A. Pérez Heredia Apelante<br><br>v.<br><br>LEGISLATURA MUNICIPAL DE UTUADO y el Hon. Jorge Lajara Sanabria, como Presidente de la Legislatura Municipal de Utuado, Puerto Rico Apelado | KLAN202300948 | *APELACIÓN* Procedente de Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Núm.: UT2023CV00304<br><br>Sobre: Mandamus, Impugnación Presupuesto 2023-2024; Impugnación Resolución 25 Legislatura Municipal; Violación a la Ley 107-2020 Código Municipal de Puerto Rico |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Ronda del Toro y la Jueza Prats Palerm[1].

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de febrero de 2024.

Comparece el Municipio de Utuado (¨apelante¨) mediante *Apelación* y nos solicita que se revoque, en parte, la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Utuado (¨TPI¨) el 4 de octubre de 2023. Mediante el referido dictamen, el TPI sostuvo que la Legislatura Municipal de Utuado (¨Legislatura Municipal¨ o ¨apelados¨) estaba facultada para aprobar el presupuesto del año fiscal 2023-2024.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

---

[1] Mediante Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designa a la Hon. Annette M. Prats Palerm en sustitución del Hon. Carlos G. Salgado Schwarz.

## I.

El 15 de julio de 2023 el Municipio de Utuado, representado por su Alcalde, Hon. Jorge A. Pérez Heredia, presentó una *Demanda* sobre Sentencia Declaratoria, *Mandamus* e *Injunction* Provisional, Preliminar y Permanente en contra de la Legislatura Municipal de Utuado y su Presidente, Hon. José Lajara Sanabria. El Municipio de Utuado impugnó las actuaciones de la Legislatura Municipal al aprobar el *Presupuesto de Ingresos y Gastos 2023-2024*. La parte apelante argumentó que los actos de la parte apelada se encontraban en contravención con el Código Municipal de Puerto Rico ("Código Municipal").

Según el Municipio de Utuado las actuaciones que contravinieron el Código Municipal fueron las siguientes reducciones: (1) $423,342.00 a $150,100.00 para el servicio de energía eléctrica; (2) $491,705.63 a $171,705.63 para el servicio de agua potable; (3) $130,000.00 a $0.00 para el pago de sentencias y reclamaciones; (4) $350,000.00 a $256,770.50 para el combustible; (5) $19,400.00 para becas a favor de los estudiantes de Utuado, y; (6) $100,000.00 a $45,000.00 para los servicios profesionales del sistema operativo de contabilidad. En síntesis, señaló que la reducción del presupuesto municipal de $11,300,000.00 a $9,857,583.00 provocó el cese de operaciones del municipio debido a su incapacidad de cumplir con sus responsabilidades estatutarias de brindarle a la ciudadanía servicios esenciales. Como consecuencia, solicitó del TPI que impugnara el presupuesto aprobado por la Legislatura Municipal.

Por su parte, el 5 de septiembre de 2023 la Legislatura Municipal presentó una *Moción en Solicitud de Desestimación*. Según la parte apelada, las causas de acción de *Mandamus* y Sentencia Declaratoria no contemplaban remedios para las controversias planteadas en la Demanda. Alegó que obró conforme a derecho, ya

que el Código Municipal la faculta a aprobar el presupuesto, a pesar de las objeciones del Alcalde. Por consiguiente, argumentaron que el Municipio no podía objetar el presupuesto por la vía judicial.

Ese mismo día, el TPI emitió una *Orden* concediéndole a la Legislatura Municipal hasta el 8 de septiembre de 2023 para exponer su posición respecto a alegaciones del Municipio de Utuado.

El 7 de septiembre de 2023 el Municipio de Utuado presentó la *Réplica a Moción de Desestimación.* En esencia, se opuso a que se desestimara la demanda porque la impugnación del presupuesto no cuestionaba la validez del proceso de aprobación. Por el contrario, expuso que la impugnación se fundamentaba en que el presupuesto aprobado resultó ser uno desbalanceado. Adujo que la Legislatura Municipal no cumplió con su deber de aprobar un presupuesto de ingresos y gastos que permitiera la continuación de las operaciones administrativas y los servicios esenciales a la ciudadanía.

Posteriormente, el 11 de septiembre de 2023 la Legislatura Municipal presentó la *Moción en Cumplimiento de Orden y Reiterando Desestimación.* En lo pertinente, reclamó que su autoridad para la asignación de los recursos disponibles, conforme a las prioridades de la ciudadanía, prevalecía ante las objeciones del Alcalde. Explicó que las modificaciones del presupuesto se hicieron a base de las recomendaciones del director asociado de la Oficina de Gerencia y Presupuesto del Gobierno de Puerto Rico. Señaló que las recomendaciones se realizaron luego de que dicha oficina se percatara de que algunas partidas propuestas en el presupuesto original estaban infladas.

En contravención, ese mismo día, el Municipio de Utuado presentó la *Réplica a Moción en Cumplimiento de Orden.* Señaló que la *Moción en Cumplimiento de Orden y Reiterando Desestimación* presentada por la Legislatura Municipal no fue sostenida por ninguna disposición legal. Además, señaló que la Legislatura

Municipal solo se limitó a discutir su facultad para aprobar el presupuesto 2023-2024, incumpliendo con lo dispuesto en la Orden del TPI.

Luego de varios trámites, el TPI dictó una *Sentencia* el 4 de octubre de 2023. Mediante la referida Sentencia, el TPI declaró *No Ha Lugar* la *Moción en Solicitud de Desestimación* presentada por la Legislatura Municipal. Resolvió que la Legislatura Municipal omitió su deber ministerial de establecer una partida para el pago de sentencias y reclamaciones de los tribunales de justicia en el presupuesto del año fiscal 2023-2024. Por tal razón, le ordenó a la Legislatura Municipal rectificar dicho error y restituir la partida en un plazo de 20 días. Añadió que el reajuste se deberá cargar a la cuenta especial establecida por la Legislatura Municipal a base de los sobrantes. En cuanto a las demás reclamaciones realizadas por el Municipio de Utuado, el TPI resolvió que no eran justiciables por tratarse de una cuestión política.

Inconforme, el 25 de octubre de 2023, el Municipio de Utuado presentó un recurso de *Apelación*. Solicitó que revoquemos, en parte, la *Sentencia* del 4 de octubre de 2023, Sostiene que el TPI cometió los siguientes errores:

> Erró el Honorable TPI al sostener que la Legislatura Municipal puede abusar de su discreción reduciendo gastos y obligaciones, al punto de hacer inoperante el funcionamiento del municipio, sin tomar en consideración que dicho cuerpo legislativo viene obligado a aprobar un presupuesto de ingresos y gastos balanceado, de tal forma en que el municipio pueda operar en beneficio de sus obligaciones de servicios de energía eléctrica, agua potable y combustible, entre otros.

> Erró el Honorable TPI al no anular el presupuesto desbalanceado y no determinar como correcto el sometido por el alcalde o en la alternativa, ordenar que el Municipio de Utuado opere con el mismo presupuesto 2022-2023, cuando el presupuesto aprobado por la Legislatura Municipal representa una merma de $1,442,417.00 que imposibilita la operación fiscal y administrativa del municipio hasta junio del 2024.

> Erró el Honorable TPI al ordenar que se sustraiga la suma de $130,000.00 del sobrante del presupuesto que concluyó al 30 de junio de 2023 y se incluya como parte del nuevo presupuesto, cuando el Código Municipal determina las

fuentes de ingresos que un municipio debe tomar para la preparación de cada presupuesto.

Este Tribunal, mediante *Resolución* emitida el 26 de octubre de 2023, ordenó a la parte apelada someter su alegato antes del 27 de noviembre de 2023.

Transcurrido el término otorgado a la Legislatura Municipal para exponer su oposición sin que hayan cumplido, se entiende perfeccionado el recurso para disponer.

## II.

### A. Doctrina de Autolimitación Judicial

Los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas. *ELA v. Aguayo*, 80 D.P.R. 552 (1958). A partir de este principio, el Tribunal Supremo de los Estados Unidos, ha desarrollado una doctrina de autolimitación judicial cuando surgen conflictos entre ramas de Gobierno, basada en el concepto de justiciabilidad. Conforme a dicha doctrina, un caso no es justiciable cuando se presenta una cuestión política o una de las partes carece de legitimación activa para promover un pleito.

Estas limitaciones al Poder Judicial descansan en dos premisas: (1) que los tribunales únicamente pueden resolver asuntos que surgen de un contexto adversativo capaz de ser resuelto judicialmente y, (2) que la Rama Judicial no intervendrá, prudencialmente, en áreas reservadas a otras ramas del gobierno, restricción inherente a la división tripartita de nuestro sistema republicano. *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1995).

La doctrina de la cuestión política surge de la realidad de nuestro sistema republicano de gobierno en el cual las Ramas Ejecutiva, Legislativa y Judicial operan mediante una separación de poderes sostenida por un sistema de pesos y contrapesos. *Córdova*

*Iturregui, et al. v. Cámara de Representantes*, 171 DPR 789 (2007). Basado en esto, existen tres vertientes de la doctrina de cuestión política:

> (a)  la que requiere que los tribunales no asuman jurisdicción sobre un asunto porque éste ha sido asignado textualmente por la Constitución a otra rama del Gobierno;
> (b) aquella según la cual las cortes deben de abstenerse de intervenir, bien porque no existan criterios de decisión susceptibles de descubrirse y administrarse por los tribunales, o bien por la presencia de otros factores análogos, y;
> (c) la que aconseja la abstención judicial por consideraciones derivadas de la prudencia. *Noriega v. Hernández Colón, supra.*

En esencia, la doctrina de cuestión política "impide la revisión judicial de asuntos que fueron delegados a las otras ramas políticas del Gobierno o, en última instancia, al electorado." *Córdova Iturregui, et al. v. Cámara de Representantes*, *supra* citando a *PPD v. Gobernador II*, 136 DPR 916 (1994); *Noriega Rodríguez v. Jarabo*, 136 DPR 497 (1994). Por tanto, un caso no es justiciable bajo la doctrina de cuestión política cuando se dan alguno de los siguientes elementos: (1) la existencia de una delegación expresa del asunto en controversia a otra rama del gobierno; (2) la ausencia de criterios o normas judiciales apropiadas para resolver la controversia; (3) la imposibilidad de decidir sin hacer una determinación inicial de política pública que no le corresponde a los tribunales; (4) la imposibilidad de tomar una decisión sin expresar una falta de respeto hacia otra rama de gobierno; (5) una necesidad poco usual de adherirse, sin cuestionar, a una decisión política tomada previamente, y (6) potencial de confusión proveniente de pronunciamientos múltiples de varios departamentos del Gobierno sobre un punto. *Silva v. Hernández Agosto,* 118 DPR 45, 54 (1986), citando a *Baker v. Carr,* 369 U.S. 186 (1962).

No obstante lo anterior, no todo asunto político necesariamente implica que sea una cuestión política. *C.R.I.M. v. Méndez Torres*, 174 D.P.R. 216 (2008). Los tribunales estamos

plenamente facultados para determinar si las otras ramas del gobierno han observado los límites constitucionales que les han sido impuesto y si sus actos exceden sus poderes delegados. *Córdova Iturregui, et al. v. Cámara de Representantes*, *supra*. Ello tiene perfecta armonía con el principio de separación de poderes, pues se ha dispuesto que:

> Son los tribunales *los intérpretes finales de las leyes* y la Constitución, e incluso, de las actuaciones de las otras ramas del Gobierno. Ello es necesario ya que una rama de gobierno no puede convertirse en juez de sus propias actuaciones. Así se vela el cumplimiento con el sistema de pesos y contrapesos. *C.R.I.M. v. Méndez Torres, supra.*

La normativa antes esbozada requiere que los tribunales, para determinar si la controversia traída ante su consideración es o no una cuestión política, examinen cuidadosamente la Constitución o la ley, lo que sea aplicable, a los fines de encontrar si el asunto en cuestión ha sido encomendado con exclusividad a otra rama del gobierno. Serrano Geyls, Raúl, *Derecho Constitucional de Estados Unidos y Puerto Rico,* Vol. I, Ed. Colegio de Abogados (1986).

## B. Presupuesto General de Ingresos y Gastos del Municipio

La Ley Núm. 107 de 13 de agosto de 2020, mejor conocida como ¨Código Municipal de Puerto Rico¨ (¨Código Municipal¨) les impone a los municipios la obligación de aprobar un presupuesto general balanceado de ingresos y gastos que gobernará durante cada año fiscal.

La Legislatura Municipal ejercerá el poder legislativo en el municipio y tendrá las facultades y deberes sobre los asuntos locales que se le confieren en el Código Municipal. Como parte de sus deberes y facultades, se encuentra la aprobación del presupuesto del municipio. 21 LPRA § 7065.

En cambio, los alcaldes ejercerán el poder ejecutivo en el municipio. Tienen la responsabilidad de dirigir, administrar y fiscalizar el funcionamiento de los municipios y sus deberes se extienden desde la administración del gobierno municipal hasta la

preparación del proyecto de presupuesto que ha de considerar la Asamblea Municipal en primera instancia. 21 LPRA § 7028; *Acevedo v. Asamblea Mun. San Juan*, 125 DPR 182 (1990).

La aprobación del presupuesto municipal comienza con la presentación del Proyecto de Resolución del Presupuesto General de Ingresos y Gastos ("proyecto de resolución") por el Alcalde ante la Legislatura Municipal. El Art. 2.097 del Código Municipal, 21 L.P.R.A. § 7311, establece que "[e]l Alcalde preparará el proyecto de resolución del presupuesto general de ingresos y gastos del municipio balanceado para cada año fiscal, **el cual deberá ser uno balanceado** [...]". (Énfasis suplido). La Constitución de Puerto Rico consagra el principio del presupuesto balanceado en la Sec. 7, Art. VI. A tales efectos, dispone:

> Las asignaciones hechas para un año económico no podrán exceder de los recursos totales calculados para dicho año económico, a menos que se provea por ley para la imposición de contribuciones suficientes para cubrir dichas asignaciones. CONST. PR art. VI, § 7.

A su vez, la Sec. 8, Art. VI dispone que:

> Cuando los recursos disponibles para un año económico no basten para cubrir las asignaciones aprobadas para ese año, se procederá en primer término, al pago de intereses y amortización de la deuda pública, y luego se harán los demás desembolsos de acuerdo con la norma de prioridades que se establezca por ley. CONST. PR art. VI, § 8.

Como parte del proyecto de resolución, el Alcalde tiene que incluir un mensaje presupuestario con unas explicaciones y justificaciones de las peticiones presupuestarias de mayor magnitud y trascendencia. 21 LPRA § 7313(a). El proyecto de resolución deberá también incluir un plan financiero con un resumen general de los gastos municipales. 21 LPRA § 7313(b).

El Art. 2.100 del Código Municipal, 21 LPRA § 7314, establece que el proyecto de resolución deberá incluir unas asignaciones mandatorias. Sobre las asignaciones mandatorias, dispone que:

> [...] En el proyecto de resolución del presupuesto general de cada municipio será mandatorio incluir asignaciones con

> crédito suficiente para los siguientes fines y en el orden de prioridad que a continuación se dispone:
> **(a) Intereses, amortizaciones y retiro de la deuda pública municipal;**
> **(b) otros gastos y obligaciones estatutarias;**
> **(c) el pago de las sentencias de los tribunales de justicia;**
> **(d) la cantidad que fuere necesaria para cubrir cualquier déficit del año fiscal anterior;**
> **(e) los gastos a que esté legalmente obligado el municipio por contratos ya celebrados;**
> (f) los gastos u obligaciones cuya inclusión se exige en este Código;
> (g) otros gastos de funcionamiento; y
> (h) la contratación de artistas de música autóctona puertorriqueña, según la Ley 223-2004, según enmendada, conocida como "Ley de Nuestra Música Autóctona Puertorriqueña".
> **La Legislatura Municipal podrá enmendar el proyecto de resolución del presupuesto general de ingresos y gastos del municipio que presente el Alcalde para incorporar nuevas cuentas o disminuir o eliminar asignaciones de cuentas. Sin embargo, las asignaciones para cubrir las cuentas indicadas en los incisos (a), (b), (c), (d) y (e) de este Artículo no podrán reducirse ni eliminarse**, pero se podrán enmendar para aumentarlas. *Id.* (Énfasis suplido).

En otras palabras, las asignaciones mandatorias serán los incisos (a), (b), (c), (d) y (e) del referido artículo. Como resultado de este mandato legislativo, ni el Alcalde ni la Asamblea Municipal pueden reducir o eliminar estas asignaciones mandatorias. Por el contrario, la Legislatura Municipal estará facultada para eliminar, reducir o aumentar las asignaciones contenidas en los incisos (f), (g) y (h).

Cuando a nuestro Tribunal Supremo le tocó interpretar este Artículo lo hizo en el citado caso de *Alcalde Mun. de Humacao v. Ramos Cofresí, supra.* En esa ocasión el más Alto Foro incluyó dentro del concepto de gastos u obligaciones, cuya inclusión se exige en lo que actualmente dispone el Código Municipal, los gastos presupuestados en ese entonces por el Alcalde de Humacao para organizar las unidades administrativas de los municipios, incluyendo la creación de los puestos del personal de confianza del Alcalde. No se extendió dicha interpretación a otros gastos ordinarios de funcionamiento. *Hon. Rivera Torres v. Legislatura Municipal De Villalba*, KLAN200901689.

En torno al trámite para la consideración y aprobación de la resolución del presupuesto del municipio durante una sesión ordinaria, el Art. 2.101 del Código Civil, 21 LPRA § 7315, establece el curso de acción a seguir y al cual debe atenerse tanto la Legislatura Municipal como el Alcalde. Establece:

> La Legislatura Municipal deberá considerar el proyecto de resolución del presupuesto general de ingresos y gastos del municipio durante una sesión ordinaria, según se dispone en el Artículo 1.037 de este Código, y aprobarlo y someterlo al Alcalde no más tarde del 20 de junio de cada año fiscal a excepción de ocasión de una declaración de emergencia. [...]
> **(b)** *Aprobación sobre objeciones del Alcalde* – Cuando el Alcalde devuelva a la Legislatura Municipal el proyecto de resolución del presupuesto general de ingresos y gastos con sus objeciones y recomendaciones, el Presidente de esta [...] convocará a una sesión extraordinaria [...] para considerar únicamente las recomendaciones u objeciones del Alcalde.
> > [...]
> > **(2) La Legislatura Municipal podrá aprobar el proyecto de resolución del presupuesto general de ingresos y gastos municipal por sobre las objeciones y recomendaciones del Alcalde, con el voto afirmativo de no menos de dos terceras (2/3) partes del número total de sus miembros de la Legislatura Municipal. El presupuesto así aprobado entrará en vigor y regirá para el año económico siguiente.**
> > (3) [...] En caso de que exista desacuerdo entre la Legislatura Municipal y el Alcalde en la aprobación de la resolución del presupuesto general de ingresos y gastos, con relación a los gastos presupuestados, la misma quedará aprobada, pero las diferencias entre las cantidades en desacuerdo serán llevadas a una cuenta de reserva. [...]

Cónsono con lo anterior, es a la Legislatura Municipal a la que le corresponde la aprobación final del presupuesto, a pesar de las objeciones del Alcalde.

Respecto al uso de los sobrantes del presupuesto del año fiscal anterior, el Artículo 2.106, 21 LPRA § 7320, dispone:

> Sin perjuicio de lo dispuesto en este Código, **a propuesta del Alcalde, la Legislatura Municipal podrá autorizar reajustes en el presupuesto general de gastos del municipio con los sobrantes que resulten como saldos en caja al 30 de junio de cada año**, después de cerrado el presupuesto y de haberse cubierto las deudas con cargo a dichos sobrantes. **También se podrá reajustar el presupuesto con los ingresos de años anteriores cobrados después del 1 de julio, que resulten como sobrantes disponibles** [...]. (Énfasis suplido).

Será decisión de la Legislatura Municipal el uso de los sobrantes en el nuevo presupuesto municipal.

**III.**

El Municipio de Utuado, mediante los primeros dos planteamientos de error, plantea que el TPI incidió al determinar que la controversia ante su consideración era una cuestión política y, por tal razón, no era justiciable. No le asiste la razón.

Como cuestión umbral, tenemos el deber de determinar si la controversia presentada ante el foro de instancia era justiciable o si, en efecto, se trataba de una cuestión política.

El Código Municipal establece las partidas que el Alcalde debe presupuestar cada año, y que la Legislatura Municipal no puede reducir o eliminar de la petición presupuestaria. El Artículo 2.100 del Código Municipal, *supra*, establece que la Legislatura Municipal no podrá reducir o eliminar las siguientes partidas: intereses, amortizaciones y retiro de la deuda pública municipal; otros gastos y obligaciones estatutarias; el pago de las sentencias de los tribunales de justicia; la cantidad que fuere necesaria para cubrir cualquier déficit del año fiscal anterior y los gastos a que esté legalmente obligado el municipio por contratos ya celebrados. Cónsono con lo anterior, la Legislatura Municipal podrá aumentar, reducir o eliminar cualquier partida que no se encuentre dentro de las partidas mandatorias. Conforme surge del referido Artículo, los gastos ordinarios de funcionamiento no están contenidos dentro de las partidas mandatorias.

Luego de examinar los hechos del caso, no hemos encontrado que la Legislatura Municipal haya intervenido con las partidas mandatorias presupuestadas por el Alcalde. Las partidas de servicios como los de energía eléctrica, agua potable y combustible no son partidas mandatorias, como pretende argumentar el Municipio de Utuado. La Legislatura Municipal, a su discreción, podrá aumentar o reducir dichas partidas, según estime necesario.

La controversia sobre las diferencias de criterio entre el Alcalde y la Legislatura Municipal respecto a ciertas partidas de gastos consignadas en el Presupuesto 2023-2024 es una cuestión política. No le corresponde a la Rama Judicial intervenir con la sabiduría del Alcalde y de la Legislatura Municipal respecto a la manera de utilizar los fondos del Municipio para cubrir sus gastos. Como consecuencia, no estamos en posición de intervenir con la discreción de la Rama Ejecutiva y Legislativa de los municipios.

Por último, mediante el tercer señalamiento de error, el Municipio de Utuado alega que el TPI no podía ordenar el uso de los sobrantes del Presupuesto 2022-2023 para cubrir la partida destinada al pago de sentencias. Tampoco le asiste la razón.

En lo pertinente, el Artículo 2.106 del Código Municipal, *supra*, claramente establece que se podrán realizar reajustes presupuestarios con los ingresos de años anteriores que resulten como sobrantes. Por ende, el TPI no cometió el error señalado al ordenar el uso de los sobrantes para cubrir el pago de las sentencias.

**IV.**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones